**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT REICH,

      Petitioner,               Civil No. 2:12-11710
                                   HONORABLE DENISE PAGE HOOD
v.                             UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Robert Reich, ("Petitioner"), confined at the Chippewa Correctional

Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree

murder, M.C.L.A. 750.317.  For the reasons that follow, the petition for writ

of habeas corpus is DENIED.

### I.  Background

Petitioner was charged with first-degree premeditated murder and

convicted of the lesser offense of second-degree murder following a jury

trial in the Macomb County Circuit Court.  This Court recites verbatim the

relevant facts relied upon by the Michigan Court of Appeals, which are

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

See e.g. *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On January 24, 2009, defendant and Richard Lehr spent the evening at Tudge's Pub in St. Clair Shores. At the time, defendant was living with Lehr at Lehr's apartment in the nearby Chapoton Apartment complex. A bartender testified that she heard Lehr tell defendant that "[h]e was tired of [defendant] mooching off him and asked him why can't he find somewhere to go or get a job ..." The record also reflects that defendant had a confrontation with another bar patron that night and, when defendant became angry and started yelling, the bar owner broke up the argument. Defendant and Lehr left the bar together when it closed around 2:00 a.m. on January 25, 2009. Defendant later told police officers that he and Lehr continued to argue about defendant moving out of Lehr's apartment as they walked back to the apartment complex. Defendant also told officers that, after they entered Lehr's apartment, defendant told Lehr that he would leave if Lehr gave him $20. According to defendant, Lehr gave him the money and defendant left the apartment.
>
> Lehr's dead body was discovered inside his apartment by a police officer on January 28, 2009. The medical examiner testified that Lehr died of ligature and manual strangulation. A broken shoelace was found near Lehr's body and his body showed signs of a struggle. However, there was no sign of forced entry into the apartment. No one saw Lehr after he left Tudge's Pub with defendant during the early morning hours of January 25, 2009.
>
> A waitress at the Travis Coffee Shop in St. Clair Shores testified that defendant came into the restaurant between 4:00 and 5:00 a.m. on January 25, 2009. The waitress testified that defendant ordered a large breakfast, but ate only a couple of bites. She also recalled that defendant appeared "nervous" and "fidgety." At defendant's request, the waitress called defendant a cab so that defendant could go to a bus station in Southfield. According to the waitress, defendant told her that he wanted to leave town.

2

The cab driver testified that he took defendant to the bus station. The driver recalled that defendant said he had an argument with his girlfriend, he did not want any trouble with the police, and he wanted to leave town. Because the bus station was closed, the cab driver ultimately dropped defendant off at around 6:30 a.m. at a Dunkin' Donuts near Telegraph and 10 Mile in Southfield.

The record reflects that defendant used Lehr's ATM card to withdraw $100 from Lehr's bank account at around 7:25 a.m. on January 25, 2009, at a gas station at 10 Mile and Telegraph. Later that day, defendant used Lehr's ATM to withdraw $200 from an ATM machine at a drug store on Five Mile Road in Redford. On the evening of January 25, 2009, defendant spent time at a crack house on Forrer Street in Detroit. After spending a couple of hundred dollars on crack, defendant requested credit to buy more drugs by using Lehr's ATM card. A man named Kaleci Hill approved defendant's request after defendant gave him Lehr's ATM card and pin number. Kaleci testified that he withdrew $300 from the account. The record reflects that Kaleci received the cash from a Comerica ATM machine in Detroit at 4:25 a.m. on January 26, 2009.

On January 30, 2009, defendant turned himself in at the Clarkston courthouse on an unrelated warrant. He was transferred to the Oakland County Jail, where he was interviewed by St. Clair Shores Detective Sergeant David Centala and Detective Steven Krauss. As noted, defendant admitted that, in the early morning hours of January 25, 2009, he and Lehr went to Lehr's apartment after leaving Tudge's Pub and he admitted that he was arguing with Lehr about Lehr's desire that he move out. Defendant maintained that he left the apartment after Lehr gave him $20. Defendant recalled that Lehr and he bumped into a black man named Ernie on their way to Lehr's apartment and that, when he left, Ernie was still in Lehr's apartment. Investigating officers later learned that the man to which defendant was referring, Ernie Farrell, was not in St. Clair Shores in the early morning hours of January 25, 2009.

3

Defendant told the officers that, when he left Lehr's apartment, he went to a restaurant called Linda's Place and then, at around 6:30 or 7:00 a.m., he took a bus to Waterford, then to Royal Oak. However, an investigation later revealed that defendant did not go to Linda's Place that morning and that the first bus did not begin its route in that area until 8:20 a.m.

For impeachment purposes, and to rebut the defense's theory that defendant was elsewhere when Lehr died, the prosecutor introduced a statement that defendant made to a police officer, Gordon Carrier, who transported defendant from the district court to the Oakland County Jail. The officer asked defendant if he was surprised about the murder charge and defendant said he was not and that he had spoken to detectives while he was in jail. Officer Carrier testified that defendant then said, "It's not like how they said. We did get into it, but it was an accident."

*People v. Reich,* No. 295776, 2011 WL 700529, * 1-2 (Mich.Ct.App. Feb.24, 2011).

Petitioner's conviction was affirmed on appeal by the Michigan Court of Appeals. *Id.*

On May 6, 2011, petitioner filed an application for leave to appeal to the Michigan Supreme Court. [1]  The application was rejected by the Michigan Supreme Court as being untimely filed because it was submitted beyond the fifty six day period for filing such applications. *See* Affidavit of Corbin R. Davis, Clerk of the Michigan Supreme Court, dated June 22, 2012 (This Court's Dkt. # 17-12).

----

[1]  *See* Petitioner's In Pro Se Amended Application For Writ of Habeas Corpus Under 28 U.S.C. § 2254 By A Person in State Custody, p. 8.

4

Petitioner filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. Seq.* While the motion was pending, petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that petitioner could finish exhausting additional claims in the state courts. *Reich v. Rapelje*, No. 2:12-CV-11710, 2012 WL 4378573 (E.D. Mich. Sept. 25, 2012).

The trial court denied the motion for relief from judgment. *People v. Reich,* No. 2009-3066-FC (Macomb County Circuit Court, Sept. 24, 2012); *reconsideration den.* 2009-3066-FC (Macomb County Circuit Court, Oct. 12, 2012). The Michigan appellate courts denied petitioner leave to appeal. *People v. Reich,* No. 315623 (Mich.Ct.App. Oct. 30, 2013); *lv. den.* 495 Mich. 992, 845 N.W.2d 101 (2014).

On June 30, 2015, the Court reopened the case to the Court's active docket. In his amended habeas petition, petitioner seeks relief on the following grounds:

I. The prosecution failed to produce legally sufficient evidence to identify Petitioner as a perpetrator of the offense beyond a reasonable doubt.

II. Petitioner was denied the effective assistance of counsel where defense counsel opened the door to the prosecutor's introduction of an extremely damaging statement allegedly made by Petitioner that was twice ruled inadmissible because it resulted from

5

custodial interrogation without the benefit of a *Miranda* warning.

III. Petitioner was denied due process, equal protection, and his right to a fair trial by the denial of his request to have evidence recovered from the decedent's apartment subjected to DNA analysis.

IV. The prosecutor violated Petitioner's state and federal constitutional due process rights to a fair trial when he improperly shifted the burden of proof to Petitioner to present evidence.

V. Petitioner was denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel failed to do a thorough pre-trial investigation; failure to interview/call witnesses material to Petitioner's theory of defense; and failure to subject the prosecution's case to meaningful adversarial testing; the cumulative effect of error thereby denied Petitioner due process and a fair trial. US. Const. Ams V, VI, XIV.

VI. Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel where appellate counsel failed to research obvious errors in Petitioner's trial due to trial counsel's failure to perform a thorough pretrial investigation, failure to interview/call witnesses material to Petitioner's theory of defense; and counsel's failure to subject the prosecution's case to meaningful adversarial testing.  The cumulative effect of errors thereby denied Petitioner due process and a fair trial.

VII. The prosecutor engaged in acts of prosecutorial misconduct where prosecution disparaged defense counsel; presented evidence in rebuttal contrary to the facts, vouched for Petitioner's guilt through the prosecutor's office.  The cumulative effect of these errors caused irreversible prejudice and denied Defendant due process and a fair trial. U.S. Const. Ams V, VI, XIV.

Respondent filed an answer in opposition to the petition for writ of

habeas corpus, which is construed in part as a motion to dismiss on the

basis that petitioner's claims are barred by procedural default. *See Alvarez*

*v. Straub*, 64 F. Supp. 2d 686, 689 (E.D. Mich. 1999).

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim–
>> (1)    resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined by
>> the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

A decision of a state court is "contrary to" clearly established federal

law if the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law or if the state court decides a

case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

Respondent contends that petitioner's claims, with the exception of

8

his sixth claim alleging ineffective assistance of appellate counsel, are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

Respondent first contends that petitioner's first through fourth claims are procedurally defaulted because petitioner failed to properly exhaust the claims by filing a timely application for review of his conviction with the Michigan Supreme Court following the affirmance of his conviction by the

9

Michigan Court of Appeals on petitioner's appeal of right.

A habeas petitioner procedurally defaults a claim if he or she fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim raised in the state court of appeals but not in the state supreme court cannot be considered in federal habeas review. *See Harris v. Stegall,* 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Petitioner raised his first four claims in his appeal of right to the Michigan Court of Appeals. Under M.C.R. 7.302(C)(3), petitioner had fifty six days to file a delayed application for leave to appeal with the Michigan Supreme Court following the Michigan Court of Appeals' decision. *See Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999). Petitioner's conviction was affirmed by the Michigan Court of Appeals on February 24, 2011. Petitioner had fifty six days from this date, or until May 1, 2011, to timely file an application for leave to appeal with the Michigan Supreme Court. Petitioner did not send his application for leave to appeal to the Michigan Supreme Court until May 6, 2011. [2]

---

[2]  Michigan has adopted some form of the prison mailbox rule, which deems a prisoner's pleading filed at the time that it is given to prison officials for mailing to the court. *See* M.C.R. 7.105, 7.204, 7.205, 7.302. Even giving petitioner the benefit of the prison mailbox rule, petitioner's application for leave to appeal was untimely because it was not mailed until May 6, 2011.

10

The Michigan Supreme Court rejected petitioner's delayed application for leave to appeal because petitioner's application was filed beyond the fifty six day time period.  Therefore, petitioner has procedurally defaulted his first through fourth claims. *See Bell v. Smith*, 114 F. Supp. 2d 633, 637 (E.D. Mich. 2000).

Petitioner failed to establish cause to excuse his default.  The fact that petitioner had to represent himself on his discretionary appeal with the Michigan Supreme Court would not excuse the default.  A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).  In a criminal proceeding in which a habeas petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *See Coleman v. Thompson*, 501 U.S. 722,  752-53 (1991).  Because petitioner had no constitutional right to the effective assistance of counsel in filing an application for leave to appeal with the Michigan Supreme Court, the fact that petitioner did not have appellate counsel to help him file an application for leave to appeal would not establish the "cause" required to overcome the procedural default of petitioner's claims which he raised on his direct

11

appeal with the Michigan Court of Appeals, but failed to timely raise in the Michigan Supreme Court. *See Harris v. Stegall,* 157 F. Supp. 2d at 750.

Petitioner claims that he was unable to timely file his application for leave to appeal to the Michigan Supreme Court because he was indigent and the prison librarian refused to make him copies of his application for leave to appeal without adequate funds in his account.

The problem with petitioner's argument is that he has presented no evidence or documentation in support of his allegations that he lacked adequate funds in his prison account or that the prison librarian refused to make him copies of his application in a timely manner.  A showing of cause by a habeas petitioner requires more than "the mere proffer of an excuse." *See Lundgren v. Mitchell,* 440 F. 3d 754, 763 (6th Cir. 2006). Therefore, a habeas petitioner cannot rely on conclusory assertions of cause and prejudice to overcome procedural default.  Instead, he or she must present affirmative evidence or argument as to the precise cause and the prejudice produced. *Id.* at 764.

Petitioner's bare assertion that the prison librarian refused to make him copies of his application for leave to appeal to the Michigan Supreme Court is insufficient to establish cause to excuse his default. *Cf. Stewart v.*

12

*Robinson,* 65 Fed. Appx. 536, 537-38 (6th Cir. 2003)(habeas petitioner not entitled to equitable tolling of the Antiterrorism and Effective Death Penalty Act's statute of limitations based on claim that he had previously mailed a habeas petition to the federal court, where there was no evidence of the petitioner's alleged prior filing; petitioner's "bare assertion" that he had mailed his habeas petition to the federal district court prior to the deadline was insufficient to show that he actually mailed the petition).

Petitioner's first four claims are also defaulted because he never attempted to raise them again in his post-conviction motion for relief from judgment and no longer has an available state remedy to properly exhaust these claims.

Petitioner has already filed a post-conviction motion for relief from judgment.  Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan is only permitted to file one post-conviction motion for relief from judgment. *See Gadomski v. Renico,* 258 Fed. Appx. 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999).  Petitioner has no remaining state court remedies with which to exhaust his first four claims.  If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed

13

for lack of exhaustion because there are simply no remedies available for him to exhaust. However, the prisoner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal. *Hannah v. Conley*, 49 F. 3d 1193, 1195-96 (6th Cir. 1995). A claim of actual innocence will excuse this "cause and prejudice" requirement. *Id.* at 1196, n.

Petitioner offers no argument as to why he did not attempt to raise his first four claims again in his post-conviction motion for relief from judgment. While ineffective assistance of appellate counsel might excuse petitioner's failure to raise these claims on his direct appeal, it does not excuse petitioner's own failure to correctly exhaust these claims in his post-conviction motion for relief from judgment. *See Gadomski v. Renico*, 258 Fed. Appx. at 784. Petitioner failed to show cause to excuse the default of his first four claims.

Respondent contends that petitioner's remaining claims, with the exception of his sixth claim, are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion, and failed to show cause and prejudice for failing to raise these claims in his

14

appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to

15

relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise his claim on his direct appeal as their rationale for rejecting his post-conviction claim.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In rejecting petitioner's post-conviction claims, the Macomb County Circuit Court judge cited to M.C.R. 6.508(D)(3) and its rule that a defendant who seeks post-conviction relief on a claim that he or she raised for the first time on post-conviction review is required to show cause and actual prejudice for failing to raise the claims on direct appeal. *People v. Reich,* No. 2009-3066-FH, Slip. Op. at * 1.  The judge then indicated that its "inquiry must focus upon Defendant's claim of ineffective assistance of appellate counsel[.]" which petitioner argued in his post-conviction motion to excuse the default. *Id.,* * 2.  The judge indicated the record did not support petitioner's claim of ineffective assistance of

16

"appellant counsel." *Id.* The judge further held that he was "not convinced

that any alleged deficiency of appellant counsel resulted in 'actual

Prejudice' to Defendant." *Id.,* * 2.

The state trial judge clearly denied relief on procedural grounds.

The judge cited Michigan Court Rule 6.508(D)(3) and concluded that

petitioner had failed to demonstrate actual prejudice on the basis of the

ineffective assistance of appellate counsel claim that he raised to excuse

the default of his other claims. Accordingly, petitioner' fifth and seventh

claims are procedurally defaulted. See e.g. *Whitman v. Palmer*, No.

09-12969, 2011 WL 3330531, at * 8 (E.D. Mich. Aug. 3, 2011). Because

the trial judge clearly denied petitioner post-conviction relief based on the

procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-

conviction claims are procedurally defaulted pursuant to M.C.R.

6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007).

Petitioner's fifth and seventh claims are procedurally defaulted. [3]

Petitioner alleges ineffective assistance of appellate counsel as

cause to excuse his procedural default. Petitioner, however, has not

---

[3] Petitioner could not have procedurally any ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

17

shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

> *Id.* at 463 U.S. at 754.

Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 753. (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland [v. Washington]* [4] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

> *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on

---

[4]  466 U.S. 668 (1984).

18

appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed an eighteen page appellate brief which raised the first four claims that

petitioner raises in his current petition. [5]  Petitioner has not shown that appellate counsel's strategy in presenting these four claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus, the claims that were raised by petitioner in his post-conviction motion were not "dead bang winners."  Because the post-conviction claims were not a "dead bang winner," petitioner has failed to establish cause for his procedural default of failing to raise his claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreover, because these claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Petitioner further argued in his motion for reconsideration of the denial of his motion for relief from judgment (Petitioner's Exhibit F) and

---

[5]   *See* Defendant-Appellant's Brief on Appeal. [Petitioner's Exhibit B].

20

again in his appeal from the denial of his motion for relief from judgment (Petitioner's Exhibit H) that appellate counsel was ineffective for failing to assist petitioner in preparing a *pro se* Standard 4 supplemental brief on petitioner's behalf to raise these additional claims. [6]

A criminal defendant has no federal constitutional right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California,* 528 U.S. 152, 163 (2000).  This is because the rights protected by the Sixth Amendment, including the right to self-representation, are rights that are available to prepare for trial and at the trial itself.  However, the Sixth Amendment does not include any right to appeal. *Id.* at 160.  The Supreme Court also rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause [of the Fourteenth Amendment], because "[U]nder the practices that prevail in the Nation today, however, we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self- representation is a necessary component of a fair appellate proceeding." *Martinez,* 528 U.S. at 161.

---

[6]   Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

There is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano,* 228 F. 3d at 684.  By accepting the assistance of counsel, the criminal appellant waives his right to present *pro se* briefs on direct appeal. *See Henderson v. Collins,* 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999); *aff'd in part, vacated in part on other grds* 262 F. 3d 615 (6th Cir. 2001)(defendant who was represented by counsel and also sought to submit *pro se* brief upon appeal did not have right to such hybrid representation).  Thus, any failure by appellate counsel to submit a *pro se* brief on petitioner's behalf does not present a constitutional question that would entitle him to relief nor would it excuse petitioner's default for failing to raise these claims on his appeal of right. *McMeans,* 228 F. 3d at 684.

    In the present case, petitioner has failed to establish cause to excuse his various procedural defaults.  Because petitioner has not alleged or demonstrated any cause for his procedural defaults, it is unnecessary to reach the prejudice issue regarding his defaulted claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider petitioner's claims as grounds for a writ of habeas corpus in spite of the procedural default.  Petitioner's sufficiency of evidence claim is insufficient to invoke the actual innocence doctrine to the procedural default rule. *Malcum,* 276 F. Supp. 2d at 677.  Moreover,  petitioner's allegations that another man named Ernie Farrell committed the crime is insufficient to establish petitioner's actual innocence, so as to excuse the default, because there is no evidence linking Mr. Farrell to the murder while there is significant evidence linking petitioner to the crime. *See e.g. Bell v. Howes*, 703 F.3d 848, 855 (6th Cir. 2012).

Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *Malcum,* 276 F. Supp. 2d at 677.

Finally, assuming that petitioner had established cause for the default of his claims, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief.  The cause and prejudice exception is conjunctive,

23

requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007).  For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's first four claims on his appeal of right and by the Assistant Michigan Attorney General in his answer to the petition for writ of habeas corpus with regards to all seven claims, petitioner has failed to show that his procedurally defaulted claims have any merit.  Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [7]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the

---

[7]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

24

substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id.*

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to

25

petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

26

IT IS FURTHER ORDERED that petitioner will be granted leave to

appeal *in forma pauperis.*

                                    s/Denise P. Hood
                                    **HON. DENISE PAGE HOOD**
Dated: January 7, 2016              UNITED STATES DISTRICT JUDGE


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 7, 2016, by electronic means and/or ordinary mail.

                                    s/K. Jackson
                                    For Case Manager LaShawn Saulsberry
                                    (313) 234-5014

27